IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**UNITED STATES OF AMERICA**

v.                                                                                          **Criminal No. 2:24-cr-00157**

**JASON ALLEN RHULE**

**DEFENDANT'S SENTENCING MEMORANDUM**

Defendant, Jason Allen Rhule, by his counsel, submits this memorandum outlining the various 18 U.S.C. § 3553(a) factors for this Court's consideration for his upcoming June 17, 2025, sentencing.

A. <u>Objections Set Forth in the PSR Addendum:</u>

Given the Government's response to his inquiry, Mr. Rhule withdraws Objection No. One. In regards to Objection No. Two, Mr. Rhule's recollection that a previous family court matter had been dismissed was intended to provide this Court with additional information and requires no further ruling. Objection No. 3 outlines Mr. Rhule's proposal for imposing a one year term of supervised release in light of the upcoming revisions to Chapter Five of the Sentencing Guidelines Manual which become effective on November 1, 2025.

Mr. Rhule has no legal objections to the Probation Office's calculation of his total offense level (19) or his Criminal History Category V. Mr. Rhule's advisory guideline range is 57 to 71 months. (PSR ¶ 93).

B. <u>18 U.S.C. § 3553(a) Factors for Consideration:</u>

The advisory guideline range for Mr. Rhule's case would seek to impose a term of imprisonment that would be greater than necessary for purposes of punishing Mr. Rhule for unlawfully possessing firearms. The guideline calculation does not take into consideration the following 18 U.S.C. § 3553(a) factors such as (1) Mr. Rhule's placement in Criminal History Category V substantially over-represents the seriousness of Mr. Rhule's criminal record; (2) Mr. Rhule's personal history and life experiences which include documented intellectual deficits during his school years and addiction to methamphetamine as an adult; and (3) his 2022 conviction for attempted manufacture of a controlled substance (four marijuana plants) and possession of a semi-automatic rifle capable of accepting a large capacity magazine does not necessarily warrant an eight offense level enhancement to his starting base offense level.

Mr. Rhule would ask this Court to impose a downward variance that would consist of a custody sentence of thirty months to be followed by a one year term of supervised release. This suggested sentence would serve as a sufficient, but not greater than necessary, punishment for his conduct. Mr. Rhule relies on the following information in support of the suggested variance.

(1)  Mr. Rhule's criminal history is somewhat atypical for individuals whose past convictions score for ten criminal history points. When Mr. Rhule was in his 20's and mid-30's, his criminal record was relatively minor and consisted of two misdemeanor convictions for possession of controlled substances and citations for

traffic related offenses. His three felony convictions occurred in relatively short order over a four year span between 2018 and 2022. (PSR ¶¶ 43-45). None of these convictions involved Mr. Rhule engaging in acts of violence towards anyone or distributing large amounts of potentially dangerous controlled substances. Mr. Rhule would attribute his use of methamphetamine as being the underlying causal factor which resulted in him engaging in the criminal conduct which resulted in two of his three felony convictions.

His first arrest on a felony charge did not occur until he was 37 years old. (PSR ¶ 43). Mr. Rhule's conviction for conspiracy to commit grand larceny in 2018 involved the theft of two riding mowers and a utility trailer which had a total value of $6,300. While Mr. Rhule was sentenced to a one to five year term of imprisonment, he discharged the sentence after serving approximately 21 months in custody, which included time spent for a parole violation. (PSR ¶ 43).

Mr. Rhule acquired two additional felony convictions in subsequent state court proceedings. His 2022 conviction for attempted manufacture of a controlled substance involved his cultivation of four marijuana plants on property located in Putnam County. (PSR ¶ 44). A one to three year custody sentence was imposed for which Mr. Rhule served approximately 11 months before being discharged on parole.[1] His 2023 conviction in Kanawha County Circuit Court for attempting to commit a felony (grand larceny) involved the theft of a hot water tank and furnace that took

---

[1] Mr. Rhule was approved for early release from custody under an accelerated parole program.

place in 2021. (PSR ¶ 45). The stolen items were valued at $2,000. Mr. Rhule's custody sentence of one to three years was run concurrently with the custody sentence imposed by Putnam County. On this sentence, Mr. Rhule was credited for more than two years for time spent in custody and on home confinement. Mr. Rhule was released on parole for his second and third convictions on September 26, 2023. His July 24, 2024, arrest for parole violation relating to the discovery of the two firearms involved with his federal case resulted in Mr. Rhule spending an additional four months in custody before discharging both sentences on November 21, 2024. (PSR ¶ 2).

U.S.S.G. § 4A1.3(b)(1) provides for consideration for a downward departure in those instances where a defendant's criminal history category "substantially over-represents the seriousness of the defendant's criminal history." The total amount of time spent by Mr. Rhule in custody for his three felony convictions is significantly less than the time of incarceration that would ordinarily be expected for offenders having ten criminal history points. Rather, someone like Mr. Rhule who has spent slightly more than four years incarcerated would be more akin to the record of an incarcerated offender having two as opposed to three felony convictions. Two separate felony convictions with imposed custody sentences of more than a year and a month would score for six criminal history points and would fall within the lower Criminal History Category III.[2] Should this Court consider this factor as a basis for

---

[2] An offender with six criminal history points would not be subject to the additional criminal history point imposed under U.S.S.G. § 4A1.1(e) for committing the instant offense while being under any criminal justice sentence.

4

the suggested downward variance, the corresponding advisory guideline range for Mr. Rhule's total base offense level of 19 within Criminal History Category III would be 37 to 46 months.

(2)  Mr. Rhule is 45 years old and has lived in the Kanawha Valley area of West Virginia for his entire life. Mr. Rhule grew up in a home where both parents were present and all of his needs were met. His father passed along his love for the outdoors to Mr. Rhule, who was an avid sportsman during his youth. Mr. Rhule was given his first hunting rifle when he was five and was active in hunting and fishing during all of the seasons of the year. Some of Mr. Rhule's fondest childhood recollections arise from hunting and fishing trips with his father. To some extent, the simple presence of the two firearms found in Mr. Rhule's bedroom brought back those positive memories from his childhood.

Mr. Rhule is not a high school graduate school and has never taken the GED exam. His problems with reading comprehension and basic math were noticed in the second grade. An Individualized Education Program ("IEP") was developed to address those issues and was in place for the remainder of his time in the Kanawha County Schools system. When he was 15 years old, his full-scale IQ score was determined to be 80, which would be considered slightly below average. Mr. Rhule was two grade years behind his peers when he dropped out of school in the 10th grade.

After leaving school, Mr. Rhule was employed in a variety of blue collar jobs which included landscaping and tree trimming. He has been employed as a commercial contractor in the 2000's where he was involved in asbestos removal

projects as well as cleaning up residences that were contaminated by homemade methamphetamine labs. He has also worked on residential construction projects with SQP Construction located in St. Albans. Upon his release from custody, Mr. Rhule is interested in reapplying to the local Painters Union or looking for a natural gas well tending position for employment. Mr. Rhule also plans to return to live with his mother in Charleston who has her own mobility problems and who was previously relying on her son for help around the home.

 Mr. Rhule has acknowledged the wrongfulness of his possession of the two firearms that he had in his bedroom. (PSR ¶ 24). His first federal conviction has driven the message home that he cannot possess any firearms for personal or family security reasons at any point in the future. Mr. Rhule attributes the criminal conduct which took place in his late 30's as arising from the methamphetamine addiction which he experienced from approximately 2015 to July of 2024. During that time frame, Mr. Rhule was always looking for extra sources of income to pay for his constant use of methamphetamine.

 Since being incarcerated at South Central Regional Jail, Mr. Rhule was placed on suboxone, which he feels has reduced his craving for drugs. Mr. Rhule has not made sought placement in any drug treatment programs while in custody as he believes that he has learned his lesson and will stay away from methamphetamine after completing his custody sentence. Mr. Rhule would ask this Court for recommendations to the Bureau of Prisons for enrollment in a program of physical therapy to increase his strength and range of motion for his left shoulder and for a

dental exam to address pain he has been noticing in some upper molars which may need to be extracted.

(3)    This Court can further consider the eight offense level enhancement under U.S.S.G. § 2K2.1(a)(3) is somewhat excessive given the nature of Mr. Rhule's prior controlled substance offense involving his cultivation of four marijuana plants as well as the fact that the potentially deadly characteristics of the semi-automatic rifle never came into play during Mr. Rhule's possession. Mr. Rhule's 2022 attempted manufacture of a controlled substance conviction is now treated as a "controlled substance offense" in light of the November 1, 2023, revision to U.S.S.G. § 4B1.2(d). Mr. Rhule's conviction for an attempt offense would not have been previously considered as a "controlled substance offense" under the Fourth Circuit's decision in *United States v. Campbell*, 22 F.4th 438 (4th Cir. 2022). Moreover, Mr. Rhule's conduct involved marijuana, which is not generally considered as being a controlled substance whose use could result in death or cause other significant health problems.

Mr. Rhule obtained a semi-automatic rifle for purposes related to protecting his home as well as for recreational target shooting. There are no allegations in this case that Mr. Rhule had committed other crimes using either of the two firearms which he possessed. The large capacity magazine enhancement within the U.S.S.G. § 2K2.1(a)(4)(B) enhancement owes its origins to the since-repealed assault weapons ban of the 1990's. The wide selection of semi-automatic firearms at outdoors stores such as Cabela's has made those weapons readily available to the general public since the September 13, 2004, repeal of the ban on semi-automatic weapons. Large

capacity magazines generally come with these types of firearms. While Mr. Rhule was never justified in possessing any type of firearm, his possession of a semi-automatic rifle does not necessarily warrant a harsher punishment based the aforementioned mitigating factors that are present.

If this Court considered the nature of Mr. Rhule's prior conviction and his possession of a semi-automatic rifle with a large capacity magazine as deserving of a six, as opposed to an eight offense level enhancement, Mr. Rhule's final offense level would drop to 17. Should this Court further consider Mr. Rhule's previous arguments that his criminal history score significantly over-represents the seriousness of his actual conduct, then Mr. Rhule's advisory guideline range would be 30 to 37 months under a revised Criminal History Category of III.

(4)  Mr. Rhule has asked this Court to take into consideration the upcoming amendments to the November 1, 2025, Sentencing Guidelines Manual and only impose a one year term of supervised release. The upcoming revisions specifically require district courts to conduct the same type of individual assessment required for imposing custody sentences in determining the length and the extent of conditions that follow any imposed supervised release term. The revisions to Chapter Five of the Sentencing Guidelines Manual recognize that the financial costs of supervising offenders should be a factor taken into consideration to the extent that supervision should only be imposed for those persons who need such oversight.

Mr. Rhule recognizes that his possession of the two firearms arose while he was on state parole and is not asking this Court to not impose any term of supervised

release. However, a reduced term of supervision, such as one year, would allow the Probation Office sufficient time to monitor Mr. Rhule's progress towards rehabilitation. Should there be any missteps by Mr. Rhule during that first year, the Probation Office can always request a modification to extend the term of supervision for a longer period of up to another two years. The imposition of a one year term would serve as an incentive to Mr. Rhule to do everything in his power to abide by all of the terms and conditions in order to avoid a prolonged period of supervision.

For the reasons set forth herein, Mr. Rhule would ask this Court to consider imposing a downward variance sentence of a term of incarceration of thirty months to be followed by one year of supervised release.

Respectfully submitted this 11th day of June, 2025.

**JASON ALLEN RHULE**

**By Counsel**

**WESLEY P. PAGE**
**FEDERAL PUBLIC DEFENDER**

<u>s/David R. Bungard</u>
David R. Bungard, Bar Number: 5739
Assistant Federal Public Defender
Office of the Federal Public Defender
300 Virginia Street, East, Room 3400
Charleston, West Virginia 25301
Telephone: (304) 347-3350
Facsimile: (304) 347-3356
E-mail: david_bungard@fd.org